**IMPORTANT NOTICE: Courtesy copies of documents you file should NOT be provided to any judge. All communications with the court SHALL ONLY be by document filed with the Clerk of Court.**

**RECEIVED**

**MAR 1 5 2010**

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| WADE GARNER, SR.,<br>        Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 1:08-CV-01977 |
| VERSUS | |
| WINN CORRECTIONAL CENTER, et al.,<br>        Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed by pro se plaintiff Wade Garner, Sr. ("Garner"), in forma pauperis, on December 17, 2008. The named defendants are Winn Correctional Center ("WCC") in Winnfield, Louisiana, Corrections Corporation of America ("CCA")(the private operator of WCC), Warden Tim Wilkinson ("Wilkinson")(warden of WCC), and numerous employees of WCC, Lt. Vernon, Officer Woo, Officer Smith, LPN Lesia Jones, Pat Thomas, Captain Coleman, Virgil Lucas, and Officer Richard Clark. Garner contends that, while he was confined in WCC on July 30-31, 2008, he was denied medical care for a medical emergency involving severe stomach pain and fever. For relief, Garner asks for monetary compensatory damages, punitive damages, and injunctive relief.

Garner contends that, on July 31-31, 2008, while he was housed in the Cypress Unit at WCC, his requests for emergency medical

assistance were ignored by Officer Smith and Lt. Vernon the night of July 30, 2008, and by LPN Jones, Capt. Coleman, and Officer Clark the morning of July 31, 2008. Garner contends that he saw Dr. Pacheco at 4:00 p.m. on July 31, 2008, by making a standard request for medical care, and that Dr. Pacheco sent him to the emergency room at Huey P. Long Hospital, where he had his ruptured appendix removed. Garner contends he remained in the hospital for three weeks.

Garner's claims against WCC, CCA, Lt. Vernon, Officer Woo, LPN Jones, Pat Thomas, and Warden Wilkinson were dismissed (Doc. 10).

Defendants Lucas, Coleman, and Clark answered the complaint (Doc. 18). Garner filed a motion for summary judgment in September 2009 (Doc. 30), which is opposed by defendants (Doc. 33). Defendants did not file a motion for summary judgment. Garner's motion for summary judgment is now before the court for disposition.

## Law and Analysis

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

2

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material."  A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct

the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.    In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.   Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).   However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.   Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Denial of Medical Care Claims

1.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs."   Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976).   The Supreme Court defined "deliberate indifference" as "subjective recklessness," or in other words a conscious disregard of a substantial risk of serious harm.   Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980 (1994).   Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291, or a difference of medical opinion between the prison's medical staff and the inmate

4

about what medicines or treatments the inmate should be receiving, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

2.

Garner contends defendants denied him medical care on July 28-31, 2008, resulting in a ruptured appendix, infection, and prolonged illness. Specifically, Garner contends in his complaint that Lucas, Coleman and Clark made the morning rounds in the Cypress Unit on July 31, 2008, saw Garner's red and swollen abdomen, laughed at his pleas for medical help, and walked away.

In his motion for summary judgment and statement of undisputed facts, Garner contends he made a sick call request on July 29, 2008 which was not processed by RN Keiffer until August 1, 2008, he alleges he talked to mental health counselor Edward Lewis on July

30, 2008 about everything that made him depressed, including not getting medical help for his stomach pain, and he told LPN Lesia Jones that he needed to go to the hospital for stomach pain on the morning of July 31, 2008 (Doc. 30). Garner further contends that, in the afternoon of July 31, 2008, he told Lt. Lang about his stomach pain and Lt. Lang immediately sent him to the infirmary (Doc. 30). Garner further contends that defendants should have seen his distress and heard his cries for medical attention when they went in and out of the disciplinary court, particularly on July 31, 2008; Garner's cell was right across the hall from the disciplinary court and defendants had to walk past him to go in and out. Garner contends defendants saw and heard him but laughed and ignored him (Doc. 30). Garner does not contend that he specifically asked any of the remaining defendants for emergency medical care (Doc. 30).

The medical records attached to Garner's motion for summary judgment (Doc. 30) show that no one noted his complaints of abdominal pain except LPN Jones on July 31, 2008 and Dr. Pacheco on July 31, 2008 (Doc. 30, Exs. 1-12). Dr. Pacheco noted that Garner had abdominal tenderness and referred him to the emergency room (Doc. 30, Ex. 13).

On August 1, 2008, WCC officials were advised by hospital officials that Garner was having surgery in one hour, that it was life-threatening, and that his family should be contacted (Doc. 30,

Ex. 13).  Garner survived the surgery and remained in the hospital on IV antibiotics for two weeks (Doc. 30, Ex. 15).  Garner returned from the hospital on August 15, 2008 and remained in the infirmary at WCC (Doc. 30, Ex. 16).

In his affidavit (Doc. 33-4), Lucas states he is the security chief for WCC, but denies having seen or heard Garner on July 31, 2008.  Lucas further states in his affidavit that, if he had seen or heard an inmate with an inflamed/swollen stomach and groin area, he would have immediately reported the matter to the medical personnel and taken steps to help the inmate; he did not laugh at Garner an walk away (Doc. 33-4).

In his affidavit (Doc. 33-3), Coleman states he was the Cypress unit manager, that he was on duty between July 30, 2008 and August 1, 2008, and he was involved in the disciplinary proceedings, but he did not see or hear Garner crying out for help or hold their stomach, groaning.  Coleman further states that all medical requests in Cypress Unit receive prompt attention (Doc. 33-3).

Clark stated in his affidavit that he was filling in for someone else in the Cypress Unit when Garner was there, that he does not recall Garner, and he was not involved in the disciplinary proceedings, but that he would never have ignored an inmate's request for medical care (Doc. 33-2).

Defendants argue they are not medical personnel, that the

defendant medical personnel have already been dismissed from this case, and that if the medical personnel did not recognize a problem with Garner, the defendants should not have been expected to (Doc. 33-1). Defendants further argue that Garner should have made a sick call request if he felt bad (Doc. 33-2).

Defendants' argument ignores the fact that Garner needed to make a medical emergency; a "sick call request" was too slow a procedure to deal with the emergency, as evidenced by the fact that he did, in fact, make a sick call request on July 29 that was not processed until August 1, after he went to the hospital.

Defendants also argue that LPN Jones saw Garner in his cell on July 31, 2008 at 9:40 a.m., found him in "no acute distress," and gave him medications for constipation (Doc. 33). Although an LPN has very little formal training and is not qualified to make a diagnosis, the fact remains that the "medical staff" was called to see Garner on the morning or July 31. LPN Jones responded, noted that Garner had abdominal pain "all around," his skin was pink and warm (but his temperature was not taken), and his pulse was 130, but did not feel he needed further care; LPN Jones ordered stool softeners and Milk of Magnesia® for him.

Defendants contend Garner's "medical distress" was not so obvious that an LPN or a layperson would see it.[1] However, by 3:15

---

[1] Michelle Kennedy, a social worker, states in her affidavit that she saw Garner at 12:45 p.m. on July 31, and did not observe him to be in physical distress. However, a social worker is not

p.m. on July 31, Garner was obviously very ill and Lt. Lang immediately took him to the infirmary, from which Dr. Pacheco immediately sent him to the hospital.

According to Garner's motion, defendants ignored his requests for medical care during a life-threatening illness and walked away from him.    Such behavior constitutes deliberate indifference to serious medical needs.    Defendants argue that, if the medical personnel, who have been dismissed from this case, did not recognize the Garner was ill, why should they be held responsible for recognizing it and liable for failing to do so.

First, the only "medical staff" to see Garner before he was taken to the infirmary was an LPN; under Louisiana law, a licensed practical nurse is not qualified or authorized by her license to make a diagnosis or prescribe medication.[2]    Therefore, to the extent that officials at WCC/CCA rely on LPNs to diagnose and prescribe, they are risking much in liability.

To the extent that defendants argue that medical malpractice, or negligent medical care, does not constitute deliberate

_____

a medical professional.
    Moreover, it is noted that the mental health evaluation forms and suicide watch forms used by the social workers and other personnel at WCC did not contain any reference checks for the physical health of the inmate (Doc. 33).

    [2] The practice of practical nursing is defined in La. R.S. 37 :961(b).   See also, Louisiana State Board of Practical Nurse Examiners: Scope of Practice @ http://www.lsbpne.com/ scope_of_practice.htm.

indifference under the Eighth Amendment, it is noted that providing an LPN to perform the diagnostic duties of a physician for inmates is neither negligence nor medical malpractice; it is a failure to provide appropriate medical care to the inmates for which responsible prison officials may be liable to any inmate harmed thereby.  Compare Rice v. Chandler, 2008 WL 1832214 (W.D.Ky. 2008).

In the case at bar, Garner alleges that he told each defendant he needed to make an emergency sick call.  Simply sending an LPN to look at Garner and make a "diagnosis" was not providing Garner with medical care.  Since neither the security officers nor the nursing staff were qualified to diagnose Garner's medical problems, he should have been permitted to make the emergency sick call in the infirmary.  If, as Garner points out, the emergency sick call was not justified, he could properly have been punished through disciplinary proceedings.  However, ignoring Garner or sending an LPN to "evaluate" his symptoms and make a diagnosis, was obviously not the correct way to handle his request to make an emergency sick call.  Therefore, the fact that the medical staff has been dismissed does not excuse the security staff defendants from liability for failing to handle Garner's request for an emergency sick call correctly.

The remaining defendants each deny that Garner told them he wanted to make an emergency sick call, deny laughing at him, deny any memory of that day, and state that it is standard procedure to

10

get medical care for inmates who make emergency sick call requests. Since Garner's and defendants' statements on this issue are contradictory, there are genuine issues of material fact as to whether defendants were deliberately indifferent to Garner's serious medical needs.

Since there are genuine issues of material fact which preclude a summary judgment, Garner's motion for summary judgment should be denied.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Garner's motion for summary judgment (Doc. 30) be DENIED and this case be remanded to the undersigned Magistrate Judge for an evidentiary hearing.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT**

11

WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 15th day of March 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE